IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MAIDA WHEELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 2:10-CV-565-WKW |
| ) | [WO] |
| STATE OF ALABAMA ) | |
| DEPARTMENT OF CORRECTIONS, ) | |
| RICHARD F. ALLEN, FRANK ) | |
| ALBRIGHT, LEOPOSEY DANIELS, ) | |
| PHYLLIS BILLUPS, LARRY FLOYD, ) | |
| and DONALD DIETZ, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

Before the court is Defendants' Motion for Summary Judgment (Doc. # 32), which is accompanied by a supporting brief and evidentiary submissions (Docs. # 32, 33). Plaintiff filed a response in opposition (Doc. # 40), which the court construes as containing a motion to dismiss without prejudice, to which Defendants replied (Doc. # 43). After careful consideration of the arguments of counsel, the applicable law and the record as a whole, the court finds that Plaintiff's Motion to Dismiss Without Prejudice is due to be denied and Defendants' Motion for Summary Judgment is due to be denied in part and granted in part.

## II.  JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 28 U.S.C. § 1367.  Personal jurisdiction and venue are adequately pleaded and not contested.

## III.  BACKGROUND[1]

Plaintiff is currently employed as a drug treatment counselor with the Alabama Department of Corrections at Elmore Correctional Facility.  While Plaintiff originally alleged claims arising during her employment at other prisons, her sole claim under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101–17, now involves Plaintiff's employment at Julia Tutwiler Prison for Women.[2]  Plaintiff began working at Tutwiler Prison in November 2007 and ended her employment there in September 2009, when she was transferred to her current station.[3]

---

[1] The facts are largely taken from Defendants' statement of facts in their Motion for Summary Judgment (Doc. # 32), which relies on Plaintiff's deposition testimony.  In her response brief, Plaintiff has neither offered her own statement of facts nor offered evidence to dispute the material facts provided by Defendants, as discussed *infra*.  Thus, the actual facts may be different than those stated here.  *See Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).

[2] Plaintiff's Complaint (Doc. # 1) originally alleged violations of the ADA, Title VII, the Fourteenth Amendment's Equal Protection Clause, the First Amendment, and Alabama state law.

[3] Plaintiff was involved in an incident in June 2009, in which she was sitting in a chair that gave way and caused her to fall.  This fall resulted in Plaintiff taking about three months off and receiving worker's compensation.  After the incident, Plaintiff requested to be reassigned to Elmore Correctional Facility, which is closer to Plaintiff's home.  Plaintiff was granted this reassignment, and she did not return to Tutwiler Prison.

Plaintiff has been involved in several car accidents and has sustained injuries resulting in her being unable to walk long distances or stand for prolonged periods of time. Plaintiff has a handicapped place card for her car to verify that she is a handicapped individual. When she began working at Tutwiler Prison, she parked in the handicapped parking spaces at the front of the institution.[4]

In late September 2008, Plaintiff was unable to park in a handicapped parking space because of an unauthorized car parked in one of the spaces. She parked in an unauthorized parking area to be close to the institution. Defendant Warden Frank Albright asked Plaintiff to move her car from the unauthorized parking area. Plaintiff complained to her supervisor and requested a reserved parking sign with her name on it to prevent further parking issues.[5] (Ex. 3 to Pl.'s Resp. Br. (Doc. # 40).)

In early October 2008, Plaintiff met with an Alabama Department of Corrections Grievance Officer and explained that an unauthorized car was parked in one of the handicapped spaces, forcing her to park in an unauthorized area. Plaintiff

---

[4] Plaintiff was told she could no longer use the handicapped parking at the front of the institution because those parking spots were reserved for visitors. However, it is unclear from the record when she was told she could not park in those spaces.

[5] Some employees at Tutwiler Prison were given designated parking spaces in the manner requested by Plaintiff. (Pl.'s Dep. 51 (Ex. 1 to Defs.' Mot. for Summ. J.).) It is unclear which employees are qualified to receive a reserved parking space.

requested a parking space near the entrance to accommodate her disability. (Ex. 3 to Defs.' Mot. for Summ. J. (Doc. # 32); Ex. 4 to Pl.'s Resp. Br.)

In response to the grievance and to eliminate unauthorized vehicles from using handicapped spaces, handicapped employee parking was designated at the back entrance of the institution "[b]ecause parking spaces [were] limited at Tutwiler Prison." (Ex. 3 to Defs.' Mot. for Summ. J.) Plaintiff was dissatisfied and sent a letter to the ADA representative, complaining about this arrangement. Plaintiff stated that she needed a parking place near the institution's front entrance to accommodate her disability.[6] Employees of Tutwiler Prison are required to clock in at the front of the institution and leave their ID cards and keys. At the end of the day, employees return to the front to clock out and gather their ID cards and keys. Plaintiff contends that walking the distances between the back gate and the front of the institution to clock in and out exacerbated her condition. (Ex. 5 to Pl.'s Resp. Br.)

Plaintiff did not request an accommodation to leave her workstation early in order to rest during her walk to the front of the institution. Plaintiff admitted that when she had taken breaks, no one had reprimanded her for doing so. (Pl.'s Dep. 58.) Plaintiff also admitted that her doctors recommended that she use a wheelchair,

---

[6] There were non-handicapped employee parking spaces near the front of the institution. (Pl.'s Dep. 52–53.)

4

walker, scooter, or cane, but that "she chose not to" so as "not to draw attention" to herself.[7] (Pl.'s Dep. 30.)

## V. DISCUSSION

### A. Voluntary Dismissal Under Federal Rule of Civil Procedure 41(a)(2)

In her response, Plaintiff requests that the court dismiss her Complaint without prejudice and order mediation. (Pl.'s Resp. Br. 3, 5.) Federal Rule of Civil Procedure 41(a)(2) allows for "an action [to] be dismissed at the plaintiff's request . . . by court order, on terms that the court considers proper." Unless stated otherwise, voluntary dismissals under this section are "without prejudice." Fed. R. Civ. P. 41(a)(2).

The Eleventh Circuit has explained that

> [a] voluntary dismissal without prejudice is not a matter of right. Although we have said that in most cases a voluntary dismissal should be allowed unless the defendant will suffer some plain prejudice other than the mere prospect of a second lawsuit, the decision whether or not to grant such a dismissal is within the sound discretion of the district court and reviewable only for abuse of discretion. And, when exercising its discretion in considering a dismissal without prejudice, the court should keep in mind the interests of the defendant, for Rule 41(a)(2) exists chiefly for protection of defendants.

*Fisher v. P.R. Marine Mgmt., Inc.*, 940 F.2d 1502, 1502–03 (11th Cir. 1991) (citations omitted); *see also Potenberg v. Bos. Scientific Corp.*, 252 F.3d 1253, 1255 (11th Cir. 2001) ("[I]n most cases, a voluntary dismissal should be granted unless the

---

[7] Plaintiff uses a motorized cart while grocery shopping. (Pl.'s Dep. 80.)

defendant will suffer clear legal prejudice, other than the mere prospect of a subsequent lawsuit, as a result." (quotation omitted)).

Defendants object to a dismissal without prejudice because they have spent time and money defending the present suit. (Defs.' Reply Br. (Doc. # 43) 1–2.) Defendants argue that there is "no legal . . . justification for giving the Plaintiff [and her new attorney] a proverbial 'second bite at the apple.'" (Defs.' Reply Br. 2.)

Plaintiff filed her Complaint on June 30, 2010, and did not make her request for voluntary dismissal until October 7, 2011. This request came more than three months after the discovery cut-off date and while a motion for summary judgment was pending. While the mere presence of a pending summary judgment motion does not qualify as legal prejudice, *see Potenberg*, 252 F.3d at 1258, a court may take this factor into account when determining whether to grant a motion for voluntary dismissal without prejudice. *See Stephens v. Ga. Dep't of Transp.*, 134 F. App'x 320, 323 (11th Cir. 2005) (holding that the district court did not abuse its discretion when it denied a plaintiff's voluntary motion to dismiss without prejudice filed two years after the complaint, where "numerous motions had been filed, extensive discovery had been produced, and motions for summary judgment were pending"); *McBride v. JLG Indus.*, No. 7:03 CV 118 HL, 2005 WL 2293566, at *3–4 (M.D. Ga. Sept. 20, 2005) (denying a voluntary motion to dismiss without prejudice filed three years after

6

the complaint, and where discovery had been conducted, numerous motions had been filed, a summary judgment motion was pending, and plaintiff's motion was an attempt to avoid an adverse ruling on the summary judgment motion); *but see Potenberg*, 252 F.3d at 1256 (holding that the district court did not abuse its discretion in granting a plaintiff's voluntary motion to dismiss without prejudice filed after the discovery cut-off date and where there was a pending summary judgment motion).

Defendants will suffer legal prejudice should Plaintiff's motion for voluntary dismissal without prejudice be granted. At each step of the litigation process, Defendants proceeded in a manner directed toward a timely resolution of the case. Defendants have spent time and money engaging in discovery and defending this suit, including filing their pending summary judgment motion.

Defendants also have accommodated Plaintiff throughout the case. Plaintiff's former counsel withdrew in April 2011, representing to the court that Plaintiff did not contact her for more than three months, and that Plaintiff breached the contract with her. (*See* Doc. # 28.) Plaintiff represented herself *pro se* until August 26, 2011, when her current counsel filed his notice of appearance. Plaintiff's deposition was taken while she was without counsel, and Defendants ensured that Plaintiff understood she no longer had an attorney and that she wanted to proceed with the deposition while representing herself. Plaintiff agreed that she did want to proceed. (Pl.'s Dep. 5.)

After Plaintiff obtained new counsel, Defendants did not oppose a thirty-day extension for Plaintiff's new counsel to familiarize himself with the case and to respond to the motion for summary judgment. (Doc. # 38.)

Instead of adequately responding to Defendants' Motion for Summary Judgment, Plaintiff abandoned all but one claim, requested a voluntary dismissal without prejudice, and made generalized arguments that summary judgment should not be granted. Accordingly, Plaintiff's motion to dismiss her Complaint without prejudice will be denied.

**B.     Summary Judgment**

   *1.     Standard of Review*

On summary judgment, the evidence and the inferences from that evidence must be viewed in the light most favorable to the nonmovant. *See Jean-Baptiste v. Gutierrez*, 627 F.3d 816, 820 (11th Cir. 2010). Hence, "'facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case.'" *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000)).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation and internal quotation marks omitted); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24.

If the movant meets its evidentiary burden, the burden shifts to the nonmoving party to establish, with evidence beyond the pleadings, that a genuine issue material to each of its claims for relief exists. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008); Fed. R. Civ. P. 56(c). When the nonmovant fails to set forth specific facts supported by appropriate evidence sufficient to establish the existence of an element essential to its case and on which the nonmovant will bear the burden of proof at trial,

9

summary judgment is due to be granted in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.").

### 2. *Plaintiff's Claims*

In her response, Plaintiff admits that she only maintains that "violations of the Americans with Disabilities Act . . . willfully [occurred] while [she was] employed with [the Alabama Department of Corrections], specifically during her employment at Julia Tutwiler Prison for Women." (Pl.'s Resp. Br. 3.)  Thus, Plaintiff's other federal statutory and constitutional claims, as well as her state law claims, have been abandoned. *See Resolution Trust Co. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")  The court will address only Plaintiff's Title I ADA claim relating to her former assignment at Tutwiler Prison.  Furthermore, because Plaintiff's claims against Defendants Leoposey Daniels, Phyllis Billups, Larry Floyd, and Donald Dietz do not arise out of her employment at Tutwiler Prison, summary judgment is due to be granted on all claims against these Defendants.

### 3. *Plaintiff's ADA Failure to Reasonably Accommodate Claim*

The remaining Defendants include Warden Albright (the only named Defendant who was employed at Tutwiler Prison), former Commissioner Richard F.

Allen, and the Alabama Department of Corrections.[8] Plaintiff claims that Defendants violated the ADA by failing to reasonably accommodate her disability after receiving notification that the employee handicapped parking in the back of the institution was burdensome and "caused Plaintiff extreme physical discomfort due to the increased distance she was required to walk[.]" (Pl.'s Resp. Br. 3.) For the reasons that follow, summary judgment is due to be granted on all Plaintiff's claims against Defendants.

First, summary judgment is due to be granted on all Plaintiff's claims against the Alabama Department of Corrections because it is entitled to immunity under the Eleventh Amendment. "Unless a State has waived its Eleventh Amendment immunity or Congress has overridden it, . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167, n.14 (1985). "[T]he Eleventh Amendment constitutes an 'absolute bar' to a state's being sued by its own citizens, among others." *DeKalb Cnty. Sch. Dist. v. Schrenko*, 109 F.3d 680, 687 (11th Cir. 1997) (*per curiam*) (citation and internal quotation marks omitted). The Alabama Department of Corrections, as a state agency, is the equivalent of the state of Alabama. *See Reeves v. Thigpen*, 879 F. Supp. 1153, 1178 (M.D. Ala. 1995). It, thus, is entitled to the same Eleventh Amendment protection as

---

[8] Plaintiff's Complaint names Warden Albright and Commissioner Allen in their individual and official capacities. (Compl. 3.)

the state of Alabama. *See Taylor v. Dep't of Pub. Safety*, 142 F. App'x 373, 374 (11th Cir. 2005).

In *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress did not validly abrogate the States' Eleventh Amendment immunity under Title I of the ADA. 531 U.S. at 374; *see also Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (*per curiam*) ("Although Congress may abrogate the states' immunity in certain situations, it has not done so with regard to suits for monetary damages by private individuals pursuant to Title I of the ADA . . . ."). Because there has not been a waiver by the Alabama Department of Corrections or an abrogation of Eleventh Amendment immunity, the Alabama Department of Corrections may not be sued in federal court for monetary damages or equitable relief for violation of the ADA. *See Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*).

Second, summary judgment is due to be granted on Plaintiff's individual capacity claims against Warden Albright and Commissioner Allen. "[I]ndividual liability is precluded for violations of the ADA's employment discrimination provision." *Albra v. Advan, Inc.*, 490 F.3d 826, 830 (11th Cir. 2007); *see also Udoinyion v. Guardian Sec.*, 440 F. App'x 731, 734–35 (11th Cir. 2011) (*per curiam*) (citing *Albra* to affirm the dismissal of ADA individual capacity claims).

12

Third, summary judgment is due to be granted on Plaintiff's monetary claims against Warden Albright and Commissioner Allen in their official capacities. "Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court." *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *see also Kentucky*, 473 U.S. at 166 (stating that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity").

Finally, to the extent that Plaintiff is seeking prospective relief on her claims against Warden Albright and Commissioner Allen in their official capacities, summary judgment is due to be granted. The Eleventh Amendment does not protect state officials from being sued for prospective declaratory and injunctive relief to remedy ongoing violations of federal law. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment does not bar suits against state officers to enjoin violations of federal law). However, it is undisputed that Plaintiff is no longer working at Tutwiler Prison. No evidence can be presented to show an ongoing violation of Plaintiff's rights under the ADA at Tutwiler Prison, and thus, any claim for prospective relief is moot.

13

## V.  CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Motion to Dismiss Without Prejudice (Doc. # 40) is DENIED and that Defendants' Motion for Summary Judgment (Doc. # 32) is GRANTED.  It is further ORDERED that Plaintiff's request for court-ordered mediation (Doc. # 40) is DENIED as moot.  A separate final judgment will be issued.

DONE this 17th day of February, 2012.

                                            /s/ W. Keith Watkins
                              CHIEF UNITED STATES DISTRICT JUDGE